**Robert W. SIX, Administrator of the Estate of Robert Ray Six, Deceased, Appellee,**

v.

**Mark Edward FRESHOUR et al., Appellants.**

No. 2-56534.

Supreme Court of Iowa.

July 31, 1975.

Smith, Peterson, Beckman, Willson & Peterson, Council Bluffs, for appellants Mark Edward Freshour and Diane K. Freshour.

Grefe & Sidney, Des Moines, for appellant Lois Jean Jamison.

Roy W. Meadows, Des Moines, for appellant Donald Jacob Lawrence.

Jones, Cambridge, Carl, Feilmeyer & Landsness, Atlantic, for appellee.

Heard before MOORE, C. J., and MASON, RAWLINGS, LeGRAND and McCORMICK, JJ.

LeGRAND, Justice.

Robert Ray Six, 19 years old, sustained fatal injuries August 20, 1970, while a passenger in a car owned by Diane K. Freshour and driven by her husband, Mark Edward Freshour. As administrator of his son's estate, plaintiff brought a wrongful death action against five defendants. Trial to a jury resulted in a verdict against four of them in the amount of $38,173. On this appeal, we affirm the trial court's judgment.

This accident occurred on a straight stretch of highway on a paved road in Pottawattamie County. Freshour and decedent were returning to their homes in Atlantic from a dance they had attended at Red Oak. The Freshour car struck the rear end of a truck owned by defendant Donald Jacob Lawrence and driven by defendant Lois Jean Jamison. The impact of this collision projected the truck into the rear end of a tractor being operated by Charles James Lawrence.

The administrator brought this action as a guest claim against Mr. and Mrs. Freshour, hereafter jointly designated as Freshour. § 321.494, The Code. He also sued Donald Jacob Lawrence as the owner and Lois Jean Jamison as the driver of the truck. The fifth defendant was Mrs. Miles Jamison, owner of the tractor. The driver of the tractor was killed in the accident. His estate was not made a defendant.

At the close of all the evidence, Mrs. Miles Jamison's motion for a directed verdict was sustained. That ruling is not challenged here. Each of the remaining four defendants appealed.

I. We consider first the appeal of Donald Jacob Lawrence, whose liability depends upon his ownership of the truck being driven by Lois Jean Jamison. § 321.493, The Code.

Donald Jacob Lawrence contends the truck was owned by his son, Charles James Lawrence, one of the victims of this accident. He asserts the trial court erred in overruling his motion for directed verdict and a later motion for judgment notwithstanding the verdict, both on this sole ground.

Defendant Lawrence testified he held title to the truck for the convenience of his son; that his son had exclusive use of and control over it; and that his son made the contract payments, paid license fees, and bought insurance on the vehicle.

On the other hand, the evidence disclosed the truck was licensed in defendant's name, the contract of purchase was executed by him, and the insurance policy issued to him as owner. In addition he made statements following the accident claiming ownership of the vehicle.

The pertinent part of our title certificate statute (§ 321.45(2)) is here set out:

"No person shall acquire any right, title, claim or interest in or to any vehicle subject to registration under this chapter from the owner thereof except by virtue of a certificate of title issued or assigned to him for such vehicle or by virtue of a manufacturer's or importer's certificate delivered to him for such vehicle; nor shall any waiver or estoppel operate in favor of any person claiming title to or interest in any vehicle against a person having possession of the certificate of title or manufacturer's or importer's certificate for such vehicle for a valuable consideration except in case of:

a.   *   *   *

b.   *   *   *

c.   *   *   *

d. Except for the purposes of section 321.493.

Except in the above enumerated cases, no court in any case at law or equity shall recognize the right, title, claim or interest

of any person in or to any vehicle subject to registration sold or disposed of, or mortgaged or encumbered, unless evidenced by a certificate of title or manufacturer's or importer's certificate duly issued or assigned in accordance with the provisions of this chapter."

Defendant's defense depends upon proof he comes within exception (d) above. This, in turn, depends upon § 321.493, The Code, which provides as follows:

"In all cases where damage is done by any motor vehicle by reason of negligence of the driver, and driven with the consent of the owner, the owner of the motor vehicle shall be liable for such damage.

"A person who has made a bona fide sale or transfer of his right, title, or interest in or to a motor vehicle and who has delivered possession of such motor vehicle to the purchaser or transferee shall not be liable for any damage thereafter resulting from negligent operation of such motor vehicle by another, but the purchaser or transferee to whom possession was delivered shall be deemed the owner. The provisions of subsection 2 of section 321.45 shall not apply in determining, for the purpose of fixing liability hereunder, whether such sale or transfer was made."

█ A prima facie case is made against defendant by showing he held a certificate of title to the truck. He attempted to avoid that rule by bringing himself within the protection of § 321.493. In view of the conflicting evidence outlined above, we hold the issue of defendant's ownership of the truck could not be decided as a matter of law. The jury was free to either accept or reject defendant Lawrence's testimony. The trial court was right in submitting this question for jury determination. See *State Farm Mutual Insurance Company v. Wyant*, 191 N.W.2d 689, 692–693 (Iowa 1971); *State Automobile & Casualty Underwriters v. Farm Bureau Mutual Insurance Company*, 257 Iowa 56, 59, 131 N.W.2d 265, 267 (1964); *Hartman v. Norman*, 253 Iowa 694, 701, 112 N.W.2d 374, 380 (1962).

The judgment is affirmed on defendant Lawrence's appeal.

II. Our conclusion in Division I also disposes of the appeal of defendant Lois Jean Jamison. Although she appealed from the judgment against her, her brief asks only that the judgment against defendant Lawrence be affirmed. Apparently she believes satisfaction of the judgment will then be sought from Lawrence (or his insurance carrier) rather than from her.

Since we have upheld this judgment and have thereby afforded her the relief she wants, we give her appeal no further consideration.

The judgment against her is accordingly affirmed.

III. This brings us to the Freshour appeal, which presents these three issues: (1) error in overruling defendant's motion for directed verdict on the ground decedent had assumed the risk of riding with defendant as a matter of law; (2) error in refusing to instruct on the negligence of Charles James Lawrence as the sole proximate cause; and (3) error in refusing to submit requested interrogatories.

IV. Defendant Freshour insists the evidence establishes as a matter of law that plaintiff's decedent assumed the risk of injury by riding with him when he knew he was intoxicated. The trial court, correctly we believe, denied a motion for directed verdict on this ground.

█ Although the defense of assumption of risk is no longer available in cases where contributory negligence may be relied on (*Rosenau v. City of Estherville*, 199 N.W.2d 125, 133 (Iowa 1972)), it may still be asserted when, as in this case, contributory negligence is not a defense. *Bessman v. Harding*, 176 N.W.2d 129, 133 (Iowa 1970).

█ Assumption of risk is an affirmative defense which defendant Freshour was obliged to prove. *King v. Barrett*, 185 N.W.2d 210, 213 (Iowa 1971); *Winkler v. Patten*, 175 N.W.2d 126, 120 (Iowa 1970).

It is seldom a party having this burden establishes the defense as a matter of law. *Cooley v. Quick Supply Company,* 221 N.W.2d 763, 765 (Iowa 1974); *Bessman v. Harding, supra,* 176 N.W.2d at 130.

Freshour relies heavily on our decision in *Bessman,* and it is apparent counsel developed the evidence with that case in mind. However, we find the facts in *Bessman* much stronger than here.

In the present case, the evidence shows that from approximately 7:00 P.M. until midnight, Freshour and decedent had each consumed seven cans of 12-ounce beer. The actual can-by-can count comes out somewhat less than that, but we accept Freshour's conclusion they drank that much. He says they were both "loud" and "happier than usual." He also stated the beer made him—and presumably decedent—"feel good." At no time did he say he was intoxicated and at no time did he say his faculties were impaired or his judgment affected. Aside from Freshour's testimony, the only evidence of drinking was that of a highway patrolman, who testified he smelled beer on Freshour's breath and, in his opinion, Freshour's faculties were impaired at the time of the accident.

There was no blood test taken, Freshour did not perform any of the usual tests to establish sobriety, and the officer's opinion was based solely on visual observation of Freshour in the hospital and the odor of alcohol on his breath.

Of course, we are not concerned with the question of Freshour's intoxication (a fact the jury verdict has established) except as it bears on the issue of assumption of risk. The elements of assumption of risk, as recently explained in *King v. Barrett, supra,* 185 N.W.2d at 213 and *Winkler v. Patten, supra,* 175 N.W.2d at 130, are catalogued in this quotation from *King v. Barrett*:

"Examination of our guest cases reveals that assumption of risk contains several elements: first, recklessness or intoxication on the defendant's part must exist— that is the risk assumed; second, the plaintiff must be aware of that recklessness or intoxication and of the danger to himself from it; third, plaintiff must have an alternative of subjecting or not subjecting himself to the danger from the recklessness or intoxication—assumption of risk must be voluntary; fourth, the plaintiff must choose to accept the risk, proved expressly or by inference; and fifth, the recklessness or intoxication must be a proximate cause of the plaintiff's harm."

In the present case, the question of assumption of risk depends solely on the strength of Freshour's testimony and the opinion expressed by the highway patrolman. No other witnesses testified concerning the drinking of these two young men nor the noticeable effect it had upon them. Even under Freshour's testimony, we cannot say his condition was so obvious that decedent must have recognized he was intoxicated and must have assumed the risk by riding with him. Seven cans of beer over a five hour period by young men who, according to Freshour, were accustomed to drinking, does not, without other evidence, establish such a condition of intoxication that it would be obvious, as a matter of law, to decedent. Cf. *Lamaak v. Brown,* 259 Iowa 1324, 1327, 147 N.W.2d 915, 916–917 (1967).

In *Bessman* we reviewed somewhat similar circumstances. In that case, however, there was considerably more drinking, and it took place during a shorter period. Furthermore, there were warnings by third persons in the presence of both guest and driver against venturing out on the highway.

Admittedly there are some circumstances present here which were also present in *Bessman* as well as in *Berge v. Harris,* 170 N.W.2d 621, 623–625 (Iowa 1969). These include such factors as joint venture drinking and knowledge from prior association concerning the effect liquor was likely to have on the one sought to be held liable.

We adhere to the principles announced in *Bessman, Berge,* and a number of other similar cases. But each case must be resolved on the particular facts disclosed by the record. In *Bessman* we held assumption of risk had been shown as a matter of law; in *Berge* we held it had not. The circumstances of the present case do not show assumption of risk as a matter of law.

One difficulty here is that Freshour hedged on his own intoxication. That term was studiously avoided. His testimony that he and decedent were "loud," "happy," and "feeling good" is enough to make out a jury question on the issue, but it is not the kind of evidence which persuades us decedent knew, as a matter of law, Freshour was intoxicated and assumed the risk of riding with him. See discussion in *Sauer v. Scott,* 176 N.W.2d 140, 143, 144 (Iowa 1970).

The trial court correctly submitted the defense of assumption of risk to the jury.

V. Freshour next urges the trial court committed reversible error in not submitting to the jury the question of the negligence of Charles James Lawrence as a sole proximate cause of this accident. The issue arises under the following unusual circumstances.

Charles James Lawrence and defendant Lois Jean Jamison, who were shortly to be married, had driven to Red Oak in the truck heretofore referred to in order to pick up a tractor owned by Mrs. Miles Jamison, which had been in that town for repairs.

Upon leaving Red Oak, young Lawrence drove the tractor and Miss Jamison followed closely behind in the truck. Their pace was necessarily slow because of the tractor's speed limitations. Miss Jamison in the truck acted as a shield or buffer between the tractor and traffic from the rear. As already related, Freshour overtook this slow-moving truck, struck it violently from the rear, and propelled the truck just as violently against the tractor.

The accident inflicted fatal injuries to Charles James Lawrence. His estate was not made a defendant in this litigation, but Freshour pled the negligent operation of the tractor was the sole proximate cause of the accident.

The trial court refused to instruct the jury on this issue. Freshour argues this was reversible error. Under the record before us, we disagree.

■ Of course, proof that another's negligence was the sole proximate cause of this accident would relieve Freshour of liability and, as Freshour points out, this is true even if that negligent conduct was by one not a party to the suit. See *Doser v. Interstate Power Company,* 173 N.W.2d 556, 559 (Iowa 1970).

■ For purposes of this discussion, we assume the evidence disclosed the tractor was operated negligently. We assume, too, this negligence might have been a proximate cause of the accident. However, there is no tenable theory upon which it could be found to be the *sole* proximate cause.

Freshour's answer alleged, first, Lawrence's negligence was the sole proximate cause of the accident. He made the same charge in a separate division as to Lois Jean Jamison. The specifications of negligence were virtually identical as to each.

The trial court instructed the jury the truck's lighting equipment was inadequate and that Miss Jamison was negligent as a matter of law. The verdict established that negligence as a proximate cause.

The truck and tractor was being operated in concert. The truck was there to insulate the tractor against traffic overtaking it from the rear. It is difficult to see how Lawrence's negligence could be a proximate cause, and the negligence of Miss Jamison, whose vehicle Freshour struck, could *not* be one.

Yet this is what is argued. Of course, this is what Freshour must argue because only if Lawrence's negligence was the sole proximate cause, will he escape liability. Under this record, it might have been possi-

ble for Miss Jamison's negligence to be the sole proximate cause; but Lawrence's could not have been.

The trial court correctly refused to submit this issue.

VI. The last issue raised is the court's refusal to submit a number of interrogatories requested by Freshour. In claiming this was reversible error, he relies on Rule 206, Rules of Civil Procedure, and a number of Iowa cases, including *Berghammer v. Smith*, 185 N.W.2d 226, 235–236 (Iowa 1971); *Ipsen v. Ruess*, 241 Iowa 730, 737, 41 N.W.2d 658, 663–664 (1950) and citations; *Porter v. Decker*, 222 Iowa 1109, 1115, 270 N.W. 897, 900 (1937).

■ As these cases hold, trial courts have considerable discretion as to submitting interrogatories, although this discretion is not unlimited.

■ The requested interrogatories all dealt in various forms with negligence and proximate cause as they related to the conduct of Lois Jean Jamison and Charles James Lawrence.

As to Lawrence, what we said in Division V is applicable here. Such interrogatories raise no questions which would be decisive of any ultimate issue in this case.

As to Lois Jean Jamison, the interrogatories posed questions which the jury had to decide in reaching its general verdict. We have held there is no prejudicial error in refusing to submit interrogatories under such circumstances. See *Dezsi v. Mutual Benefit Health and Accident Association*, 255 Iowa 1027, 1037, 125 N.W.2d 219, 225 (1963) and *Dohse v. Market Mens Mutual Insurance Company*, 253 Iowa 1186, 1193, 115 N.W.2d 844, 848 (1962).

VII. Finding no reversible error, we affirm the judgments as rendered.

Affirmed.